344 P.2d 1021

Matter of Louis L. ZUSSMAN, a Member
of the State Bar of Arizona,
Respondent.

No. 6707.

Supreme Court of Arizona

Oct. 14, 1959.

Whitney & LaPrade, Phoenix, for re-
spondent.

Kenneth S. Scoville, Phoenix, for State
Bar of Arizona.

PER CURIAM.

Formal charges were filed on October 30,
1957, against respondent Louis L. Zussman,
a member of the State Bar of Arizona, to
the effect that he had violated canons of
professional ethics numbered 11, 32, and 38,
and had been guilty of deceit and misrepre-
sentation in connection with the purchase
by complainant, Ruth G. Marks (now
Boles), of a one-fourth interest in the New
Windsor Hotel property located in Phoenix,
Arizona. Following a hearing before the
Local Administrative Committee for Dis-
trict No. Four, the Committee, on May 22,
1958—while it made no mention of canon

violations—found that the actions of respondent violated para. 4 of Rule 29(b), Rules of the Supreme Court, 17 A.R.S., which reads:

"Any action or omission, either related or unrelated to the practice of law, indicating mental or moral unfitness to continue the practice of law."

The Committee's recommendation, in certifying the matter to the Board of Governors, was as follows:

"Inasmuch as the actions complained of occurred in July, 1949, were discovered by the complainant in October, 1949, and were not reported to the State Bar until June, 1956; and inasmuch as the respondent has practiced law in Arizona continuously since 1949 without complaint from any other clients, the committee does not feel that disbarment or suspension is proper in this case. However, the committee concludes that even though such time has elapsed, and the respondent's actions since have been good, the respondent's actions were highly improper, and thus that he should be publicly reprimanded by the Supreme Court."

Later the Board of Governors conducted a hearing at which counsel for respondent appeared, but no new evidence was adduced. Following said hearing the Board, on August 1, 1958, accepted the findings of fact and recommendations of the Committee and recommended to the Supreme Court that the respondent be reprimanded. These recommendations are entitled to serious consideration. In re MacDonald, 56 Ariz. 120, 105 P.2d 1114.

There are two other factors, worthy of mention, that where presented to and obviously considered by the Committee and Board of Governors, viz.:

1. *Stale and outdated complaint of misconduct.* The purchase of the hotel property was consummated in July 1949; the complainant knew of the misrepresentations here in question by October 1949, and yet no complaint was made to the Bar Association until the month of June 1956, some seven years later.

2. *Collection of debt angle.* Attorney Kenneth S. Scoville, Examiner for the Committee, made this frank statement, viz.:

"I want to say into this record that as far as your examiner is concerned, that I am the first to agree that Mrs. Marks is more interested in and has been more interested through the years to try to make herself whole, dollars-and-cents-wise, than she was to have whatever action was indicated by reason of the violation of professional conduct by Mr. Zussman. * * *"

We quote from the brief of respondent as to his attitude in the matter, viz.:

"Respondent takes no exception to the recommendation by the Committee

and by the Board of Governors that he be publicly reprimanded. He admits that a wrong was perpetrated upon the complaining party, and that same was accomplished through his own misrepresentations."

In this unique situation it would appear no useful purpose would be served by a recitation of the somewhat involved facts. Suffice it to say the hotel purchase venture turned out to be a very unsound investment in spite of respondent's later "valiant and heroic" efforts to make a success of it. The parties being unable to meet the payments agreed upon, the contract was forfeited by action of the seller with a loss to all of the parties. Complainant's loss was some $22,500 of which she ultimately recouped approximately $12,700. Respondent—while initially making no financial contribution toward the purchase of the property as he originally deceitfully claimed to have done—managed the hotel for nearly a year and a half without salary and later paid some $3,000 to $3,500 of his own money into the venture, in an effort to keep the contract payments current. In addition he thereafter paid complainant approximately $6,700, plus $2,500 to another participant who lost money on the deal.

■ It should be noted that we are dealing with a situation involving *nonprofessional misconduct* by respondent, i. e., there is no evidence that respondent was ever employed by complainant Ruth G. Marks as her attorney, nor was any attorney's fee ever paid to him by her or anyone else in connection with this hotel venture. It is significant that neither the Administrative Committee nor the Board of Governors expressly found the relationship of attorney-client to exist. However, it does not follow that respondent is thereby immune to disciplinary action when he has violated either the canons of professional ethics or a positive rule of court. Para. 4 of Rule 29(b), supra, expressly provides that disciplinary action may be taken for *"any action or omission, either related or unrelated to the practice of law * * *."* (Emphasis supplied.) See 7 C.J.S. Attorney and Client § 24, Nonprofessional Misconduct.

■ While this Court is the ultimate trier of the facts in this type of proceedings, it is obvious from what has already been said that we have no factual issue to resolve. We have carefully examined the entire record and feel disposed to follow the recommendations of the Committee and the Board of Governors, even though their recommendations are not binding upon us. In doing so we in no sense condone the deceit and misrepresentation by respondent to complainant as to what the true sales price was or the down payment required on the purchase of the New Windsor Hotel. This conduct was reprehensible. It is to

respondent's credit that he does not now seek to justify such action. As it turned out he has paid dearly over a long period of years, both in humiliation and mental suffering as well as dollar-wise, for the untruths uttered and the deception practiced. Possibly the Committee and Board of Governors in making their recommendations considered the following quotation from Alexander Pope's "Essay on Criticism" to be apropos:

"To err is human; to forgive, divine."

 In the past we have repeatedly pointed out that the objective and purpose of disciplinary proceedings is to protect the public, the profession, and the administration of justice, and not to punish the offender. See In re Richey, 76 Ariz. 152, 261 P.2d 673. The respondent has been a member of the Bar of Illinois since 1935 and was admitted to practice in Arizona in the year 1948. Insofar as the record discloses this is the ·first time any complaint has ever been made against him for alleged violation of the canons of ethics, statutes, or rules of court regulating the practice of law.

It is our opinion that the ends of justice require no more than that respondent, Louis L. Zussman, be publicly reprimanded for his unethical conduct, and it is so ordered.