573 P.2d 481

**In the Matter of a Member of the State Bar of Arizona, James J. DWIGHT, Respondent.**

**No. SB–110.**

Supreme Court of Arizona, En Banc.

Dec. 12, 1977.

Rehearing Denied Jan. 17, 1978.

Preston J. Steenhoek, Phoenix, State Bar Counsel.

James J. Dwight, Scottsdale, in pro. per.

HAYS, Justice.

On February 22, 1977 the Disciplinary Board of the State Bar of Arizona submitted to this court Findings of Fact and Recommendations, as amended, concerning the respondent, James J. Dwight. Briefs were filed and oral argument was heard on November 17, 1977.

The complaint in this matter arose from a civil action filed in the Superior Court of Maricopa County by the plaintiff, Clara B. Medland, against the respondent and his wife. This complaint was assigned to a local administrative committee on February 10, 1975. After considerable delay, hearings were held on May 8, June 14 and September 10, 1976; Mrs. Medland appeared as a witness, and respondent also testified. Thereafter, on September 30, 1976 the Findings of Fact and Recommendations of the local committee were forwarded to the State Bar, recommending disbarment.

The Disciplinary Board of the State Bar conducted a hearing on January 15, 1977. Prior to the hearing, respondent had sub-

mitted a Response and Statement of Opposition, and a request to submit the affidavits of James J. Dwight, Dorothy J. Kilpatrick and Clara B. Medland. The hearing was attended by respondent and his counsel and by bar counsel. The Disciplinary Board unanimously adopted the Findings of Fact, Conclusions and Recommendations of the local administrative committee except for three minor amendments.

When disciplinary action against an attorney is recommended, it is the court's duty to determine for itself the facts. *In re Johnson,* 106 Ariz. 73, 471 P.2d 269 (1970). An examination of the record in this matter indicates that Clara B. Medland was referred to the respondent in early 1960. The services rendered included legal services, accounting services, and investment counseling services. The respondent, in addition to engaging in the practice of law, did accounting work in his capacity as a Certified Public Accountant, and participated in a number of investment ventures. The testimony of Mrs. Medland and the respondent indicate that the primary purpose of their association was for respondent to invest her funds in various ventures in which he and some of his friends and clients participated. Over a period of approximately ten years this investment relationship continued, with respondent, on occasion, also providing legal and accounting services. The investments culminated in a loss of Mrs. Medland's funds in an amount in excess of $50,000. Early in the relationship, respondent apparently had indicated to Mrs. Medland that he would reimburse her if the ventures resulted in losses.

A very small portion of Mrs. Medland's losses have been repaid to her by respondent. On February 1, 1974 respondent executed a promissory note in the amount of $100,000 and on February 2, 1974 he signed an agreement which became one basis for the lawsuit filed by Mrs. Medland against the Dwights.

As is apparent from the record, the local administrative committee had some difficulty reconstructing the details of a number of financial transactions spread over a long period of time. Bar counsel initially requested records from respondent and got a few. Thereafter, through three hearings spread over a period of time, more records were made available and more information came to light.

It would serve no useful purpose to attempt to summarize the various items of evidence which give rise to the recommendations of the local administrative committee and the Disciplinary Board. Suffice it to say there is ample evidence in the record to support those recommendations under the clear and convincing quantum of proof required. *In re Wilson,* 106 Ariz. 34, 470 P.2d 441 (1970).

The following are the Findings of the local administrative committee as amended and adopted by the Disciplinary Board:

"From the foregoing facts, the committee finds and concludes that respondent engaged in unprofessional and unethical conduct in violation of the Code of Professional Responsibility and of Rule 29(a) and (b), Rules of the Supreme Court, as follows (all references 'DR' are to the Disciplinary Rules of the Code of Professional Responsibility of the American Bar Association):

"1. From 1962 until on or about the year 1972 the respondent undertook the representation of Mrs. Clara B. Medland with respect to the investment of her funds.

"2. During the period of time the respondent represented Mrs. Medland, he failed to maintain proper accounting records with respect to such funds and the investment thereof and further failed to provide Mrs. Medland with truthful and accurate information with respect to the status of such funds from time to time thereby constituting a course of misrepresentation in violation of DR 1–102(A)(4) and 9–102(B)(3).

"3. In connection with funds received by Mrs. Medland from the proceeds of the DeRosa loan respondent placed such funds in his own checking account. In comingling his personal financial affairs with those of Mrs. Medland he was in violation of Canon 9 and DR 9–102(A).

"4. Respondent's representation of other persons, including Mr. Euel Britton, with respect to the investment of a portion of the DeRosa proceeds was in violation of DR 5–105(A) and DR 1–102(A)(4).

"5. Respondent used funds entrusted to him by Mrs. Medland in May of 1962 to purchase stock for another client, Mr. Euel Britton, in violation of DR 9–102.

"6. Respondent without properly advising and clearly explaining the consequences thereof invested certain of Mrs. Medland's funds into ventures in which he had a direct economic interest thereby constituting a potential conflict of interest with his client, Mrs. Medland, in violation of DR 5–104. The investments include, without limitation, Michigan-Arizona Development Company, Desert Flame Motels, Inc., Jet Development, Inc., Sequoia Investment Co., University Income Properties, Anchor Investment Development Company and Trans-East Air Inc.

"7. Respondent failed to prepare, keep and maintain sufficient documentation to establish his relationship with Mrs. Medland with respect to such investments and his actions arising out of and the result of the above-mentioned matters constitute violation of Canon 9 and DR 1–102(A)(4), 1–102(A)(6) and 5–104(A).

"8. Respondent took for his own personal use from Mrs. Medland the total sum of $12,900, most of which has never been repaid. In addition, respondent cashed a $10,000 check made payable to Mrs. Medland by Barnes Construction Company dated April 30, 1969 for which he has been unable to account. Such action constitutes a violation of Canon 9 and DR 1–102(A)(4), 1–102(A)(6) and 5–104(A).

"9. Mrs. Medland testified that respondent assumed responsibility for the payment of certain life insurance policy premiums insuring her life under policies issued by Bankers Life Insurance Company of Des Moines, Iowa. Respondent denied assuming such responsibility. The committee credits the testimony of Mrs. Medland in that regard and not the testimony of respondent. Respondent failed to take necessary action to reinstate the policy or send sufficient proceeds to avoid the final lapse of such policy. His actions in that regard constitute a violation of DR 1–102(A)(6) and 6–101(A)(3).

"10. Respondent, in the preparation of Mrs. Medland's tax returns, failed to set forth losses incurred on investments made with Mrs. Medland's money with various entites [sic] including, without limitation, University Income Properties, Inc. and East Air Inc. in violation of DR 5–101(A) and DR 7–101.

"11. On or about August 26, 1962, respondent sold stock purchased for Mrs. Medland some three months before at a loss and contemporaneously made a 'loan' in the amount of $6,500 to himself out of the joint bank account, in violation of DR 5–104(A).

"12. Respondent asserts that at all times he was acting in good faith and intended to repay Mrs. Medland. Like the Supreme Court of Arizona, *In Re Krotenberg,* 111 Ariz. 251, 527 P.2d 510 (1974), the committee has no device for measuring purity of heart and must rely on a credibility determination and objective facts. The committee does not credit the testimony of the respondent in this respect nor any testimony of the respondent not independently corroborated by other evidence. In making its credibility determinations, the committee relies, inter alia, on the following matters:

a. In his initial response to the committee, the respondent denied receipt of the DeRosa loan proceeds after having purportedly examined his records and suggested that, at most, if such proceeds had been received, they amounted to $2,000. Not until a hearing was held on the matter did respondent purport to account for the DeRosa proceeds.

b. Respondent failed to give any account whatever of the disposition of the $10,000 received on or about April 30, 1969; he offered no plausible explanation as to the possible disposition of the funds.

c. During the twelve months commencing in December of 1968 respondent received approximately $160,000 representing

his share of the proceeds of sale of the Big Bend Water Company. He made no attempt to repay Mrs. Medland the amount he owed at that time, and in fact borrowed an additional $2,900 from Mrs. Medland to invest in D & K.

d. Respondent testified that in 1969 when a check payable to the Bankers Life Insurance Company was returned he did not take further action because he did not have the money. Some proceeds from sale of the Big Bend Water Company referred to in the preceding paragraph had been received by respondent. Two weeks prior to receipt of the letter from the insurance company, respondent borrowed $2,900 of Mrs. Medland's funds to invest in the D & K Investment Company. During the year 1969, $56,000 was invested in Mr. Dwight's capital account in D & K Investment Company, and other investments were made.

e. Respondent's demeanor and his testimony before the committee leads the committee to conclude that he was trying to mislead it. As to some matters, only when they were raised by the committee did Mr. Dwight offer any testimony concerning them.

f. Mr. Dwight failed to call Mrs. Kilpatrick as a witness. Mrs. Kilpatrick, who has been Mr. Dwight's secretary since 1959, could presumably corroborate Mr. Dwight's testimony that complete and accurate records were kept of all transactions relating to Mrs. Medland. Mrs. Kilpatrick might also have first hand knowledge with respect to other matters such as the disposition of the proceeds of the $10,000 Barnes Construction Company check. Because of the failure of Mr. Dwight to call his employee, Mrs. Kilpatrick, as a witness, the committee draws an adverse inference against Mr. Dwight. The issues of alleged inadequacy of books and records, respondent's professed intention to pay Mrs. Medland back and others are subjects about which Mrs. Kilpatrick has knowledge.

g. Respondent testified that in July, 1969, when the premiums on Mrs. Medland's insurance was [sic] due, he was out of money personally and that the proceeds of the

sale of the Big Bend Water Co. were probably used to pay debts (R.T. 185). On July 1 or 2, 1969, respondent deposited $135,000 into his account at the United Bank. Approximately $37,000 was utilized to pay debts. Mr. Dwight's bank records indicate that checks were drawn during July, 1969 which were clearly for investment in the amount of $69,925.

h. In 1970, Mrs. Medland was issued stock in Anchor Investment with a presumed value of $27,426. Mr. Dwight now admits owing her at least $50,000 and signed a Promissory Note for $100,000.

"12. [sic] The committee finds and concludes that Mrs. Medland was not sophisticated with respect to investments and other financial matters and placed her entire trust and confidence in respondent. The committee finds and concludes that respondent's entire course of conduct during his representation of Mrs. Medland whether as attorney, investment advisor or otherwise, was one of misrepresentation."

■ Finally, we consider it necessary to comment on respondent's attempt to engage in three professional occupations at the same time with the same client. As long as a lawyer is engaged in the practice of law, he is bound by the ethical requirements of that profession, and he may not defend his actions by contending that he was engaged in some other kind of professional activity. For only in this way can full protection be afforded to the public which is the court's role in the disciplinary process. *In re Zussman*, 86 Ariz. 272, 344 P.2d 1021 (1959).

Ordered that respondent be and he is hereby disbarred.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HOLOHAN and GORDON, JJ., concur.