589 P.2d 442

**In the Matter of a Member of the State Bar of Arizona, Wallace Lee LARSON, Respondent.**

**No. SB–142.**

Supreme Court of Arizona, En Banc.

Jan. 9, 1979.

Richard E. Norling, Phoenix, for the State Bar of Arizona.

N. Warner Lee and James E. Brophy, III, Phoenix, for respondent.

HAYS, Justice.

This action arises from two disciplinary complaints which were consolidated for hearing before a State Bar Administrative Committee. After extended hearings, the Committee recommended censure on both complaints. After further hearing, the Disciplinary Board affirmed the recommendations of censure. Respondent thereafter filed Objection to the Recommendation of Discipline. Briefs were filed and oral argument was had.

In order to keep the facts straight we shall deal with each complaint separately. The first complaint, which we shall call the Menzemer complaint, involved Arthur and Cornelia Menzemer, husband and wife. The Menzemers owned an undivided sixty percent (60%) interest in real property and improvements situated in Maricopa County. Initially they went to Respondent Larson's partner to seek assistance in disposing of this property and he turned the matter over to respondent for handling. Thereafter, respondent was primarily responsible for the matter.

A partition action was filed against the Juttings who owned the remaining forty percent (40%) interest in the real property. An attorney named Manfred Wetzel filed an answer and counterclaim on behalf of the Juttings alleging, among other things, a trespass by Mr. Menzemer. Damages, actual and punitive, in the amount of $55,000.00 were sought.

During the course of the litigation, Mr. Menzemer died and respondent continued to handle the action for Mrs. Menzemer. Mrs.

Menzemer thereafter often relied on her son, Jack Smith, for advice and assistance.

The financial circumstances of the Menzemers were modest, with the subject real estate being the main asset. The value of their interest in the property was approximately $21,000.00. The fee arrangement they made with the respondent was on an hourly basis. Ultimately, Mrs. Menzemer received bills for legal services totaling over $13,000.00. However, it must be noted that the Menzemers and subsequently Mrs. Menzemer received periodic billings and had discussed the mounting cost of respondent's legal services.

■ We have not outlined in detail the various legal services performed but a study of the record compels the conclusion that at the least, the respondent showed poor judgment in permitting the hours to accumulate to such magnitude in a matter of this nature. We do not discipline attorneys for errors of judgment, however, unless there is clear and convincing evidence that the Code of Professional Responsibility has been violated. *In the Matter of Dwight,* 117 Ariz. 407, 408, 573 P.2d 481, 482 (1977). The Committee and the Disciplinary Board found a violation of Rules of the Supreme Court, rule 29(a), DR 2-106(A) and (B), which reads as follows:

"(A) A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee.

(B) A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee. Factors to be considered as guides in determining the reasonableness of a fee include the following:

(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

(3) The fee customarily charged in the locality for similar legal services.

(4) The amount involved and the results obtained.

(5) The time limitations imposed by the client or by the circumstances.

(6) The nature and length of the professional relationship with the client.

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

(8) Whether the fee is fixed or contingent."

■ In deciding the rather close question here we must mention some of the mitigating factors which might militate against the imposition of discipline. After Mr. Menzemer's death, Mrs. Menzemer and more especially her son interrupted the course of the litigation and added to the number of hours expended. The son himself went to the judge to whom the case was assigned and got additional time to try to raise funds to purchase for himself the property which was being sold pursuant to court order. After delay, the son failed to come up with the money. In addition, respondent found himself dealing with an attorney who constantly erected roadblocks to a conclusion of the litigation by alternate action and inaction. The large counterclaim demand with its prayer for punitive damages complicated respondent's task.*

After an independent examination of all the evidence and the record herein, we conclude that as to the Menzemer complaint the respondent should not be censured.

■ We now turn to the second complaint which we shall call the Aldridge complaint. Shirley Aldridge, who was related

* *See Matter of Wetzel,* 118 Ariz. 33, 574 P.2d 826 (1978), where this attorney was indefinitely suspended.

to the respondent by marriage, asked him to undertake her representation in a domestic relations matter that had already been filed. Respondent indicated that his fee would be $50.00 per hour, and he proceeded to take over the case, handling first an order to show cause wherein child custody, support, and attorney's fees were the issues. At the conclusion of a one-day hearing, Aldridge was awarded temporary custody of the children, child support and $1,000.00 attorney's fees which went to respondent.

A few months later, just prior to the commencement of the trial, respondent sent Aldridge a bill for legal services to that point which approximated $5,000.00.

The trial commenced and after only one-half day of trial, Aldridge attempted suicide. This necessitated a postponement of the trial. After Aldridge left the hospital and while she was still under psychiatric treatment, respondent prepared and got her to sign a promissory note in the amount of $8,900.00 payable $400.00 per month. This note included $1,000.00 for services to be rendered in the future.

At the time of the execution of the note, Aldridge was unemployed although she had previously been employed as a registered nurse earning approximately $650.00 per month gross. Aside from the question of child custody, the real and personal property involved in the Aldridge divorce was valued at approximately $20,000.00.

The following excerpt from the findings of the Committee accurately reflect the record and the conclusions that may be drawn therefrom.

"10. Under all the existing facts and circumstances the respondent, WALLACE L. LARSON, charged a clearly excessive fee to. the complaining witness, Shirley Aldridge, for the services rendered.

"11. The time and labor expended by the respondent, WALLACE L. LARSON, in representing Shirley Aldridge was far in excess of the reasonable time expenditure necessary to handle a matter of that nature.

"12. There was no particular novelty or difficulty in the legal questions or issues presented or in the factual matters involved in the *Aldridge vs. Aldridge* contested divorce action.

"13. There was no particular or extraordinary skill required of the respondent, WALLACE L. LARSON, to properly perform the legal services.

"14. There was no likelihood that by accepting representation of Shirley Aldridge the respondent, WALLACE L. LARSON, would thereby be precluded from representation of other clients.

"15. The fee customarily charged in the locality for similar legal services is grossly disproportionate to the fee charged by the respondent. WALLACE L. LARSON, to Shirley Aldridge.

"16. A favorable result was obtained by the hearing on the order to show cause for temporary custody but that favorable result did not justify the fee charged.

"17. The amount of property involved was modest and did not justify the fee charged.

"18. There were no particular or unusual time limitations imposed by Shirley Aldridge or by the circumstances upon the respondent, WALLACE L. LARSON, which would justify the fee charged.

"19. There was no prior professional relationship existing with Shirley Aldridge before the representation in question.

"20. The respondent, WALLACE L. LARSON, had no extraordinary experience, reputation or ability as a lawyer which would justify the charging of the fee.

"21. The fee arrangement was fixed (i. e. on an hourly basis) and not contingent.

"22. At the time the complaining witness signed the note for $8,900 on November 23, 1973, at the request of the respondent, WALLACE L. LARSON, she was of questionable emotional stability and this fact was known to the respondent, WALLACE L. LARSON.

"23. The respondent, WALLACE L. LARSON, prepared the $8,900 note for the signature of Shirley Aldridge and included therein a provision that his client would also pay respondents as additional attorneys' fee the sum of $3,000 in the event that suit was brought to enforce the note.

"24. Shirley Aldridge discharged respondents as her attorneys on or about December 17, 1973.

"25. In early 1974 the respondent, WALLACE L. LARSON, prepared and the respondent, JOHN R. SNOWBERGER [respondent's partner], signed and verified as true a Superior Court complaint wherein suit was filed and recovery was sought from Shirley Aldridge on the $8,900 note she signed on November 23, 1973, including a prayer for $3,000 in attorneys' fees.

"26. That following the filing of the Superior Court lawsuit against Shirley Aldridge to collect the $8,900 plus $3,000 more in attorneys' fees, part of which $8,900 was not then owed or earned by the respondents, the complaining witness, Shirley Aldridge, filed a petition in bankruptcy to be discharged from the obligation evidenced by said note.

"27. In the bankruptcy matter filed by Shirley Aldridge the respondent, WALLACE L. LARSON, prepared and the respondent JOHN R. SNOWBERGER [respondent's partner] signed a pleading objecting to the discharge of the obligation owed to Snowberger & Larson by Shirley Aldridge.

"28. The basis of the objection was that Shirley Aldridge had negotiated a property settlement agreement directly with her husband's attorney, which settlement gave up the custody of the children and most, if not all, of her property rights."

The respondent dismissed the Superior Court action, withdrew the objections to the discharge in bankruptcy and wrote off the note obligation in full, but only after disciplinary proceedings were commenced.

After a careful examination of the evidence in the Aldridge matter, we hold that Respondent Larson did violate Rule 2–106(A) and (B) by charging and attempting to collect an excessive fee.

It is ordered that respondent be and he is hereby censured for this conduct.

Further ordered that the costs of this proceeding in the amount of $1,409.48 are assessed against respondent.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HOLOHAN and GORDON, JJ., concur.